IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| PATMOS ENERGY, LLC fka JAKE OIL of UTAH, LLC, a Utah limited liability company,<br><br>     Plaintiff,<br><br>v.<br><br>SST ENERGY CORPORATION, a Colorado corporation,<br><br>     Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:08-CV-00166<br><br>Judge Dee Benson |

This matter is before the court on defendant SST Energy Corporation's ("SST Energy")

sealed motion for summary judgment.  A hearing on the motion was held on November 4, 2009.

At the hearing, SST Energy was represented by Robert O. Rice and Jonathan G. Pappasideris.

Plaintiff Patmos Energy, LLC ("Patmos") was represented by Matthew Boley and Catherine L.

Brabson.  After taking the motion under advisement, the court has further considered the law and

facts relating to the motion.  Being fully advised, the court renders the following Memorandum

Opinion and Order.

## BACKGROUND

Patmos is an oil and gas operator specializing in the exploration of natural gas in the

Sunnyside area near Price, Utah.  SST Energy is an oil and gas drilling contractor from Casper,

Wyoming.  On July 13, 2006, Patmos purchased a lease to drill for natural gas in the Sunnyside

Area.  The lease was set to expire in November 2007, unless Patmos succeeded in drilling a well

on the leased property.  Patmos secured a permit to drill a "wildcat" well in the Sunnyside Area

referred to as CBM State 22–14 ("CBM 22–14").  A "wildcat" well is a well drilled in an area

where it is not known whether the operator will hit natural gas.  Patmos hired approximately

forty-five different companies to work on the CBM 22–14 project.  Patmos searched for a

drilling company to drill the actual drill hole, eventually contacting SST Energy.  SST Energy

represented to Patmos that its drilling equipment, rig, and crew were capable of drilling CBM

22–14.  SST Energy and Patmos exchanged drafts of an industry-standard International

Association of Drilling Contractors ("IADC") daywork drilling contract.  Patmos reviewed and

revised the contract.  Patmos' revisions included changing language to state that access to the

well site would require four-wheel drive, instead of two-wheel drive vehicles.  (*Id.* ¶ 7.3.)

Patmos consulted with oil and gas industry professionals regarding the IADC daywork contract.

On September 25, 2007, Patmos and SST Energy entered into the IADC daywork contract

whereby SST Energy agreed to furnish services, materials and equipment for drilling of the CBM

22–14 well.

On or about October 23, 2007, SST Energy commenced drilling operations.  During the

course of drilling, Patmos and SST Energy experienced some delay and difficulties.  On or about

October 24th, SST Energy's drilling rig had power issues whose repair caused a delay in drilling.

On October 30th and November 2nd, there were two over pull incidents where the drill string[1]

became stuck in the hole.  Patmos contends that the stuck-pipe incidents occurred because SST

Energy failed to follow Patmos' instructions and used too much power to pull the drill string out

of the well hole.  In both incidents, SST Energy was able to release the pipe and keep drilling.

On November 2nd, 3rd and 4th, deviation surveys showed that the well hole was deviating off

vertical from the surface location.  Knowing that the well hole was deviating, Patmos instructed

---

[1]A drill string is essentially a column, or string, of drill pipe that transmits drilling fluid
and rotational power to a drill bit.

SST Energy to keep drilling.  Under Patmos' supervision, SST Energy's drilling rig averaged approximately 489 feet of drilling depth per day.  On or about November 5, 2007, Patmos was cautiously optimistic about the progress of CBM 22–14.  The well hole depth was at about 7500 feet with natural gas in the hole.  On or about November 7, 2007, a gyroscopic survey showed that CBM 22–14 had significantly deviated off vertical from the surface location.  Patmos explored the possibility of hiring directional drillers to try and straighten the well hole.  On November 12, 2007, the drill string became stuck in the hole for the third time.  Instead of attempting to release the drill string, Patmos terminated drilling operations and abandoned CBM 22–14.  At this point, Patmos had not been paying certain vendors on the project.  (*See* Pl.'s Opp'n Summ. J. at xxxix.)

It is SST Energy's position that CBM 22–14 could have been corrected and completed under budget, but Patmos ran out of money and could not attract investors to support the project, so it shut down the entire drilling operation.  It is Patmos' position that SST Energy drilled the well in such a manner that it could not reasonably be completed and was unusable, a total loss.  Patmos claims that SST Energy failed to provide all equipment specified in the contract, failed to furnish a rig and equipment that functioned properly, provided a grossly untrained and inexperienced crew, and failed or refused to follow explicit instructions given by Patmos' agent concerning the drilling of the well.

## A.  Daywork Contract

The parties' contract consists of a standard IADC daywork contract with a number of blanks for the name of the operator, the contractor, the location of the well, the commencement date of drilling operations, the rates to be charged for various tasks, and other items.  Patmos was designated the "Operator" and SST Energy was described as the "Contractor."  The contract

begins with a statement that "Operator [Patmos] engages Contractor [SST Energy] as an independent contractor to drill the hereafter designated well or wells in search of oil or gas on a Daywork Basis" and that "[SST Energy] shall furnish equipment, labor, and perform services as herein provided, for a specified sum per day under the direction, supervision and control of [Patmos] (inclusive of any employee, agent, consultant or subcontractor engaged by [Patmos] to direct drilling operations)." (Daywork Contract at 1.) The first heading in the daywork contract announces in bold letters: THIS CONTRACT CONTAINS PROVISIONS RELATING TO INDEMNITY, RELEASE OF LIABILITY, AND ALLOCATION OF RISK. (Daywork Contract at 1.) In addition, the daywork contract states that "[e]xcept for such obligations and liabilities specifically assumed by [SST Energy], [Patmos] shall be solely responsible and assumes liability for all consequences of operations by both parties while on a Daywork Basis, including results and all other risks or liabilities incurred in or incident to such operations." (*Id.*)

The parties focus particular attention on paragraph 14. Entitled "RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK," it provides in part:

> 14.2  *In-Hole Equipment*: [Patmos] shall assume liability at all times for damage to or destruction of [SST Energy's] in-hole equipment, including, but not limited to, drill pipe, drill collars, and tool joints, and [Patmos] shall reimburse [SST Energy] for the value of any such loss or damage . . .

> 14.4  *Operator's Equipment*: [Patmos] shall assume liability at all times for damage to or destruction of [Patmos's] or its co-venturers', co-lessees', or joint owners' equipment, including, but not limited to, casing, tubing, well head equipment, and platform if applicable, regardless of when or how such damage or destruction occurs, and [Patmos] shall release [SST Energy] of any liability for any such loss or damage.

> 14.5  *The Hole*: In the event the hole should be lost or damaged, [Patmos] shall be solely responsible for such damage to loss of the hole, including the casing therein. [Patmos] shall release [SST Energy] and its suppliers, contractors and subcontractors of any tier of any liability for damage to or loss of the hole,

and shall protect, defend and indemnify [SST Energy] and its suppliers, contractors and subcontractors of any tier from and against any and all claims, liability, and expense related to such damage to or loss of the hole.

14.6  *Underground Damage*: [Patmos] shall release [SST Energy] . . . of any liability for, and shall protect, defend and indemnify [SST Energy] . . . from and against any and all claims, liability and expense resulting from operations under this Contract on account of injury to, destruction of, or loss or impairment of any property right in or to oil, gas, or other mineral substance or water . . .

14.12  *Consequential Damages*:  Subject to and without affecting the provisions of this Contract regarding the payment rights and obligations of the parties or the risk of loss, release and indemnity rights and obligations of the parties, each party shall at all times be responsible for and hold harmless and indemnify the other party from and against its own special, indirect or consequential damages, and the parties agree that special, indirect or consequential damages shall be deemed to include, without limitation, the suppliers, contractors and subcontractors of any tier from and against all claims, demands and causes of action of every kind and character in connection with such special, indirect or consequential damages suffered by Operator's co-owners, co-venturers, co-lessees, farmors, farmees, partners and joint owners.

14.13  *Indemnity Obligation*: Except as otherwise expressly limited in this Contract, it is the intent of the parties hereto that all releases, indemnity obligations and/or liabilities assumed by such parties under the terms of this Contract, including, without limitation, Subparagraphs 4.9 and 6.3(c), Paragraphs 10 and 12, and Subparagraphs 14.1 through 14.12 hereof, be without limit and without regard to the causes or causes thereof, including, but not limited to, preexisting conditions, defect or ruin of premises or equipment, strict liabilty, regulatory or statutory liability, products liability, breach of representation or warranty (express or implied), breach of duty (whether statutory, contractual or otherwise) any theory of tort, breach of contract, fault, the negligence of any degree or character (regardless of whether such negligence is sole, joint or concurrent, active, passive or gross) or any party or parties, including the party seeking the benefit of the release, indemnity or assumption of liability, or any other theory of legal liability. . . .  Except as otherwise provided herein, such indemnification and assumption of liability shall not be deemed to create any rights to indemnification in any person or entity not a party to this Contract, either as a third party beneficiary or by reason of any agreement or indemnity between one of the parties hereto and another person or entity to this Contract.

(Daywork Contract ¶ 14.)  The contract requires that SST Energy provide a crew and drilling equipment, such as a drilling superstructure, drilling pipe and other equipment.  (*Id.*)

5

Finally, the contract requires that "[e]ach party hereto agrees to comply with all laws, rules, and regulations of any federal, state or local government authority which are now or may become applicable to that party's operations covered by or arising out of the performance of this Contract." (Daywork Contract ¶ 8.3.) The contract contains a Wyoming choice of law provision. (*Id.* ¶ 18.)

## B. Complaint

On February 29, 2008, Patmos sued SST Energy. Patmos' complaint alleges five claims for relief. First, Patmos contends that SST Energy breached the daywork contract by purportedly failing to provide an adequate drilling rig and crew. Second, Patmos asserts that SST Energy breached an implied warranty to drill CBM 22–14 in a "workmanlike manner." Third, Patmos alleges that SST Energy breached the implied covenant of good faith and fair dealing associated with the parties' daywork contract. Forth, Patmos claims that SST Energy is subject to tort liability for negligence. For the above claims, Patmos requests judgment in damages, pre-judgment and post-judgment interest, and attorneys fees and costs. Finally, Patmos requests declaratory relief in the form of a judgment stating that SST Energy materially breached the daywork contract and that, as a result, Patmos is not obligated to pay the outstanding amount of $435,160.92 owed to SST Energy under the daywork contract.

## C. SST Energy's Motion for Summary Judgment

On September 15, 2009, SST Energy moved for summary judgment on all of Patmos' claims. In its supporting memorandum, SST Energy argued that it is entitled to summary judgment because under the parties' daywork contract Patmos released SST Energy from all

liability for all claims Patmos has asserted against SST Energy.[2]  In the alternative, SST Energy also argues that: Patmos' implied warranty claim is unrecognized by Wyoming law; Patmos' negligence claim fails under the economic loss doctrine; and Patmos' claim for consequential damages fails because it does not result from SST Energy's conduct.  Below, the court addresses whether SST Energy is entitled to summary judgment on Patmos' claims for breach of contract, breach of implied warranty, breach of duty of good faith and fair dealing, negligence, and consequential damages.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows for entry of summary judgment if the evidence in the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The United States Court of Appeals for the Tenth Circuit has explained that when applying this standard the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  This does not mean, however, that the existence of a mere scintilla of evidence in support of the non-moving party's position is enough to overcome summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "[T]here must be evidence in which the jury could reasonably find for the [non-moving party]."  *Id.*  Both parties agree that Wyoming law controls in this case.

---

[2]Subsequently, SST Energy acknowledged in its reply memorandum that Patmos' declaratory cause of action should survive summary judgment.

## DISCUSSION

In response to SST Energy's motion for summary judgment,  Patmos challenges the enforceability of the exculpatory provisions in the parties' daywork contract.  Specifically, Patmos argues the exculpatory provisions in the parties' daywork contract are rendered void by Wyoming's anti-indemnity statute.  Patmos argues the exculpatory provisions at issue are so broad and one-sided that they are unconscionable.  Patmos argues that the parties' exculpatory provisions cannot relieve SST Energy from its liability for willful and wanton conduct.  Patmos argues that the exculpatory provisions are void or voidable on grounds of, among other things, fraud, mistake and unfair dealing.  Patmos argues that a party cannot waive the duty of good faith and fair dealing in a contract.  And finally, Patmos argues that it cannot waive consequential damages for the same reasons as the exculpatory provisions.  The court will address each of Patmos' unenforceability arguments seriatim.

### A.  Enforceability of the Parties' Daywork Contract

Daywork contracts are common and widely used in the oil and gas industry.  Under a daywork contract, an operator engages a contractor to drill a well at a specified location to a specified depth and agrees to pay the contractor at a specified rate per day.  *Ruby Drilling Co., Inc. v. Duncan Oil Co., Inc.*, 47 P.3d 964, 968 (Wyo. 2002).  Accordingly, the operator and not the contractor, takes the risk of added expense because of delays and difficulties encountered in drilling.  *Id.*  Patmos and SST Energy entered into an industry-standard IADC daywork contract.  According to the contract's plain language, Patmos specifically agreed to assume responsibility for and release SST Energy from all losses and all consequential damages, regardless of whether such losses or damages are attributable to SST Energy's alleged breach of contract, breach of warranty, breach of duty, or negligence.

8

1.  Wyoming's Anti-Indemnity Statute

     Patmos claims the exculpatory provisions in the parties' daywork contract are rendered

void by Wyoming statute. Section 30–1–131 of the Wyoming Statutes provides,

> (a) All agreements, covenants or promises contained in, collateral to or affecting
> any agreement pertaining to any well for oil, gas or water . . . which purport to
> indemnify the indemnitee against loss or liability for damages for:
>
>> (i) Death of bodily injury to persons;
>
>> (ii) Injury to property; or
>
>> (iii) Any other loss, damage, or expense arising under either (i) or (ii)
>> from:
>>> (A) The sole or concurrent negligence of the indemnitee or the
>>> agents or employees of the indemnitee or any independent
>>> contractor who is directly responsible to such indemnitee; or
>>>
>>> (B) From any accident which occurs in operations carried on at the
>>> direction or under the supervision of the indemnitee . . . are against
>>> public policy and are void and unenforceable to the extent that
>>> such contract of indemnity by its terms purports to relieve the
>>> indemnitee from loss or liability for his own negligence.  This
>>> provision shall not affect the validity of any insurance contract or
>>> any benefit conferred by the Worker's Compensation Law . . . of
>>> this state.

Wyo. Stat. § 30–1–131.[3]  Patmos argues that the parties' exculpatory provisions are void and

unenforceable under the anti-indemnity statute. Patmos calls attention to the fact that the

daywork contract is an "agreement pertaining to a well for oil, gas, or water. . . ."  (Pl.'s Opp'n.

Summ. J. at 4.)  The daywork contract further "purports to indemnify SST against loss or liability

for . . . a []loss, damage, or expense arising . . . from the sole or concurrent negligence of [SST

---

[3]Wyoming courts have long recognized that the primary purpose of the anti-indemnity
provision is to promote safe working conditions for Wyoming's workers.  *Bolack v. Chevron,
U.S.A., Inc.*, 963 P.2d 237, 242 (Wyo. 1998) (citation omitted).  In pursuing this purpose, the
anti-indemnity provisions are designed to insure a continuing motivation for persons responsible
to take accident prevention measures.  *Id.* (citation omitted).

Energy]." (*Id*.) And, that the exculpatory language in the contract "purports to relieve [SST Energy] from loss or liability for [its] own negligence." (*Id*.) Patmos argues the term "indemnify" in the anti-indemnity statute prohibits any type of exculpatory provision, including release provisions, that relieve someone from liability. Thus, the exculpatory provisions in the parties' daywork contract are against public policy and void and unenforceable.

On the other hand, SST Energy argues that the anti-indemnity statute is inapplicable in the instant case. First, SST Energy argues that Patmos waived any protection under the statute by failing to plead this argument. Second, SST Energy argues the anti-indemnity statute is inapplicable because the exculpatory provisions, i.e., release provisions, at issue in this case are distinct from the indemnity clauses that the statute prohibits in order to promote safe working conditions for Wyoming's workers. SST Energy points out that itself and Patmos are two business entities engaged in an arm's length transaction and SST Energy is not seeking indemnity from Patmos. SST Energy is seeking a contractual release, an agreed upon exculpation from Patmos.

The court finds that Wyoming's anti-indemnity statute provides Patmos no escape from the parties' daywork contract. First, while the court is diffident as to whether Patmos was required to plead the applicability of Wyoming's anti-indemnity statute, the court finds that Patmos failed to timely assert this argument. Patmos raised the anti-indemnity statute argument for the first time in its opposition memorandum, more than eighteen months after Patmos filed its complaint. SST Energy had no prior notice that Patmos intended to claim that the exculpatory provisions in the parties' daywork contract were unenforceable under the statute. At this point in Patmos' litigation, this argument is untimely.

Second, even if the argument was timely, the court finds that Patmos' attempted application of Wyoming's anti-indemnity statute in the instant case is clearly outside the prohibition of the statute.  Contrary to Patmos' assertion, the anti-indemnity statute does not cover "anything that relieves somebody from liability."  (Summ. J. Hr'g Tr. 22, Nov. 4, 2009.) Wyoming courts have consistently held that section 30–1–131 *only* prohibits indemnification of the indemnitee's own negligence.[4]  *See Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d. 1051, 1075 (Wyo. 2002)*; Bolack,* 963 P.2d at 242 (holding that the contractual provisions at issue were only unenforceable under Wyoming's anti-indemnity statute where they were being used to indemnify an indemnitee against the consequences of its own negligence) ("While the contractual provisions at issue may be enforceable under other circumstances, in this instance they are being used to enforce the . . . Agreement in a manner which patently violates Wyo. Stat. § 30–1–131") (emphasis added).  Moreover, "an agreement containing a provision violative of the anti-indemnity statute is not void and unenforceable in total, but only to the extent that it violates the statute." *Gainsco Ins. Co.,* 53 P.3d. at 1075; *id. at* 1078 (warning that Wyoming's anti-indemnity statute should be strictly applied because it restricts freedom to contract, a common law right).  In the instant case, SST Energy has not made a claim for indemnity.  SST Energy is not seeking to recover damages from Patmos for monies paid by SST Energy to a third party due to SST Energy's negligence.  Wyoming statute § 30–1–131 is inapplicable because there is no provision at issue in the case that violates the statute.

Therefore, the exculpatory provisions are not unenforceable under Wyoming's anti-indemnity statute.

---

[4]No other Wyoming statute declares an agreement which indemnifies against one's negligence to be void.

2.  Unconscionability

Patmos claims the exculpatory provisions are unenforceable because they are unconscionable.  (See Pl.'s Opp'n. Summ. J. at 3.)  A court may relieve a contracting party from the anticipated or actual difficulties undertaken pursuant to a contract if the contract is voidable on grounds of unconscionability.  *See Snyder v. Lover check*, 992 P.2d 1079, 1089 (Wyo. 1999). Patmos references a South Carolina case for the proposition that "[a]n exculpatory agreement will be held to contravene public policy if it is so broad that it would absolve the defendant from any injury to the plaintiff for any reason."  *Fisher v. Stevens*, 584 S.E.2d 149, 153 (S.C. Ct. App. 2003).  Patmos argues that the scope of the exculpatory clauses are so broad that they purport to bar any recovery and absolve SST Energy of any accountability for its acts and omissions. Patmos argues that upholding the exculpatory provisions would make the parties' daywork contract "a one-sided sham."[5]  (Pl.'s Opp'n. Summ. J. at 6.)

On the other hand, SST Energy contends that Patmos makes no real effort to explain how the exculpatory provisions violate Wyoming public policy.  SST Energy also argues that it remains accountable to Patmos because it remains bound to fulfill its obligation to perform under the daywork contract and Patmos is free to contend at trial that SST has failed to do so.  Patmos has the right to raise SST Energy's alleged breach as a defense to SST Energy's breach of contract claim seeking the drilling contract price.

 Inquiry into whether contract provisions unreasonably favor one party over the other concerns the contract's unconscionability.  *See Pittard v. Great Lakes Aviation*, 156 P.3d 964,

_____

[5]Patmos also makes a one sentence argument that the exculpatory provisions fail for lack of consideration because they excuse SST Energy of any responsibility for performance.  The court finds that Patmos' consideration argument is untimely.  Further, the court finds that SST Energy is not excused from "any responsibility for performance" and its drilling services are legal consideration to support the exculpatory provisions.

974 (Wyo. 2007).  To sustain a claim that a contract is unconscionable, both the absence of a

meaningful choice and the presence of contract provisions unreasonably favorable to one party

must be found.  *See id.*; *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 246 (Wyo. 2000).

The court approaches claims that a contract is void as unconscionable cautiously because the

court does not lightly interfere with the freedom of contract.  *See Roussalis,* 4 P.3d 209 at 245.

In the absence of bargaining naughtiness or absence of meaningful choice, the court will not

invalidate a contract in the name of unconscionability.  *See id.* at 247 (citation omitted).  Here,

SST Energy and Patmos exchanged drafts of an industry-standard IADC daywork drilling

contract.  Patmos reviewed and revised the contract.  Patmos was not surprised by fine print or

concealed terms.  There was not a great inequality of bargaining power.  This case involves two

sophisticated businesses with relatively equal bargaining power who negotiated the terms of a

voluntary agreement.  The evidence does not demonstrate a lack of meaningful choice or

unfairness.  The parties were free to contract for whatever terms they wished, and they chose to

allocate the risk of loss to Patmos.  *See Snyder*, 992 P.2d at 1089.  Moreover, the parties'

daywork contract does not absolve SST Energy of all accountability for its acts and omissions.

Patmos can pursue its declaratory action claim and if Patmos can prove that SST Energy did not

perform under the contract, Patmos does not have to pay SST Energy any money.  Granting all

favorable inferences from the facts to Patmos, they are insufficient to establish that the parties'

exculpatory provisions are unconscionable.

3.  Willful and Wanton Conduct

      Patmos claims that the parties' exculpatory provisions cannot relieve SST Energy from

liability for its allegedly willful and wanton conduct.  Wyoming law recognizes that exculpatory

clauses cannot be used to avoid liability for willful and wanton conduct in certain circumstances.

13

*See Milligan v. Big Valley Corp.*, 754 P.2d 1063, 1065 (Wyo. 1988) (stating that specific agreements absolving participants and proprietors from negligence liability during hazardous recreational activities are enforceable, subject to willful misconduct limitations).  Patmos argues that SST Energy's conduct constituted willful and wanton negligence because SST Energy failed or refused to follow explicit instructions given by Patmos' agent concerning the drilling of the well.  Thus, the exculpatory provisions cannot relieve SST Energy from liability.

SST Energy argues that Patmos waived its willful and wanton claim by failing to plead it.  SST Energy also argues that Patmos lacks sufficient evidence to support its allegations.

The court finds that Patmos' unenforceability argument based on willful and wanton conduct fails.  First, Patmos failed to plead willful and wanton conduct and the argument is untimely.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In this regard, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference of the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Further, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . .  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* (internal quotations omitted).  Here, neither the court nor SST Energy had notice of Patmos' allegation of willful and wanton conduct.  Patmos' complaint itself does not use the words willful and wanton.  At the hearing, Patmos argued it met the pleading standard because the general allegations section of the complaint states that SST Energy "failed and refused to comply with the directions of Patmos'

agents concerning drilling the well." (Compl. ¶ 12.)  This does not allow the court to draw a

reasonable inference of willful and wanton behavior.  Patmos raised the willful and wanton

conduct argument for the first time in its opposition memorandum, more than eighteen months

after Patmos filed its complaint.  SST Energy had no prior notice of this argument.  SST Energy

had no meaningful opportunity to conduct discovery on the issue.  Accordingly, the court finds

that Patmos waived its willful and wanton claim because Patmos failed to plead it and because it

is untimely.

   Even if not waived, Patmos lacks sufficient evidence to support its willful and wanton

allegations.  "Willful and wanton misconduct is the intentional doing of an act, or an intentional

failure to do an act, in reckless disregard of the consequences and under circumstances and

conditions that a reasonable person would know, or have reason to know that such conduct

would, in a high degree of probability, result in harm to another."  *See Milligan*, 754 P.2d at 1068

(citation omitted).  Willful and wanton negligence requires a showing that the defendant

intentionally committed an act of unreasonable character in disregard of known or obvious risk

that is so great as to make it highly probable that harm will follow.  *See Bryant v. Hornbuckle*,

728 P.2d 1132, 1136 (Wyo. 1986) ("In order to prove that an actor has engaged in willful

misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do

harm.").  In this case, Patmos references certain instances where SST Energy alleged failed to

follow instructions for the proposition that SST Energy's conduct was willful and wanton.

However, Patmos has not produced evidence showing that SST Energy, at any time, actually

knew that loss of the well or that a high probability of losing the well was obvious.  At the

hearing, Patmos even suggested it was irrelevant if SST Energy thought it would all work out.

(Hr'g Tr. 32.)  Unlike offering evidence that a school bus driver intentionally disobeyed orders

and drove a school bus through a red light into a busy intersection, simply claiming that SST

Energy "deliberately" failed and refused to follow instructions from Patmos' agent does not

demonstrate an extreme departure from ordinary care or reckless disregard of the consequences.

Failure to follow instructions alone does not rise to the level of willful and wanton negligence.

Granting all favorable inferences from the evidence to Patmos, they are insufficient to establish

that SST Energy was guilty of willful and wanton misconduct.

Therefore, the exculpatory provisions are not unenforceable on the grounds that SST

Energy's conduct was allegedly willful and wanton.

## 4.  Fraud, Mistake, Unfair Dealing and Other Circumstances

Patmos argues that the exculpatory provisions are void or voidable on grounds of, among

other things, fraud, mistake and unfair dealing.  Specifically, Patmos argues that when it entered

into the daywork contract, it did so relying upon SST Energy's false representations that it would

provide a quality and capable rig, specifically adjusted for the high altitude site and that it would

provide an experienced and skilled crew.

The court agrees with SST Energy that Patmos' arguments fail for several reasons.

Foremost, Patmos failed to plead fraud, mistake, unfair dealing, or any other related cause of

action.  *See* Fed. R. Civ. P. 8(a) and 9(b); *Twombly*, 550 U.S. at 570 (holding the complaint must

plead "enough facts to state a claim to relief that is plausible on its face").  SST Energy had no

prior notice of these arguments. SST Energy had no meaningful opportunity to conduct

discovery on the issues.  Further, Patmos failed to cite sufficient facts to support any of these

allegations, as required to withstand summary judgment.  *Anderson,* 477 U.S. at 252 ("[T]here

must be evidence in which the jury could reasonably find for the [non-moving party].").

Moreover, Patmos made no effort to explain how it meets the prima facie elements of its

allegations for fraud, mistake, or unfair dealing, each of which are legally-defined theories. Therefore, the court rejects Patmos' assertion that the parties' exculpatory provisions are void on grounds of fraud, mistake, or unfair dealing.

5.  Duty of Good Faith and Fair Dealing

Patmos contends that its claim of SST Energy's breach of its duty of good faith and fair dealing cannot be contracted away or waived in advance.

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *See Scherer Const., LLC v. Hedquist Const., Inc.*, 18 P.3d 645, 653 (Wyo. 2001).  The court finds that the duty to perform the contract in good faith cannot be waived by either party to the agreement. *See Beck v. Farmers Ins. Exchange*, 701 P.2d 795, 801 n.4 (Utah 1985).  There are two types of good faith and fair dealing claims, tort-based and contract based.  The scope of permissible tort-based clams for breach of implied covenant of good faith does not extend beyond the insurance or employment context. *See Scherer Const., LLC,* 18 P.3d at 652 (Wyoming courts "have not extended the scope of permissible tort-based breach of implied covenant of good faith claims beyond the insurance or employment context"). However, parties to a commercial contract may bring a claim for breach of the implied covenant of good faith and fair dealing based on a contract theory. *Id.* at 655.  In this case, the parties' exculpatory clauses purport to preclude Patmos' breach of duty of good faith and fair dealing claim.  However, Patmos cannot waive this claim.  Therefore, the court finds that the parties' exculpatory provisions are unenforceable against Patmos' duty of good faith and fair dealing claim.

17

6.  Consequential Damages

Patmos claims that its contractual waiver of consequential damages is unenforceable. Patmos argues that the consequential damages limitation clause in the daywork contract is unenforceable for the same policy reasons that it argued applied to the exculpatory provisions.

For the same reasons that the exculpatory provisions are enforceable, Patmos' contractual waiver of consequential damages is enforceable.  This holding recognizes that the basic principles of freedom of contract allow parties to contractually exclude or limit liability for consequential damages.  *Quicksilver Resources, Inc. v. Eagle Drilling, L.L.C.*, Case No. H–08–868, 2009 WL 1312598, at *4 (S.D. Tex May 09, 2009); 11 *Corbin on Contracts (Damages)* § 58.16 (stating that the courts see no harm in express agreements limiting the damages to be recovered for breach of contract); Restatement (Second) of Contracts § 351 cmt. a (1981) ("When parties expressly exclude or limit consequential damages, the basic principles of freedom of contract counsel that the agreed upon provision should be enforced.").  In *Quicksilver Resources*, which Patmos cites in its opposition memorandum, the parties entered into an IADC daywork contract that expressly defined and provided for the waiver of consequential damages. *Quicksilver Resources, Inc.,* 2009 WL 1312598 at *5, 7.  In holding that the consequential damages waiver was valid and enforceable, the *Quicksilver Resources* court noted that, despite the "volume and nature of the waivers and definitions contained [in the clause]," the "specifically enumerated damages are barred from recovery . . . regardless of the cause of action in which they are sought."  *Id*.  Notwithstanding the harsh result, the parties are bound by the unambiguous terms of their agreement.  *Id.* at *7.  Here, the parties were free to contract for whatever terms they wished, and Patmos chose to waive the right to recover consequential damages.

18

In sum, the court finds the exculpatory provisions regarding breach of contract, breach of implied warranty, negligence, and consequential damages enforceable.  The court finds the exculpatory provision regarding duty of good faith and fair dealing unenforceable.  Having addressed the enforceability of the exculpatory provisions, the court looks specifically at SST Energy's arguments for summary judgment.

**B.  Survivability of Patmos' Claims**

SST Energy argues that Patmos specifically waived each of its claims in the parties' daywork contract**.**  It is well established in Wyoming that when parties reduce a contract to writing, they must abide by its plainly stated terms.  *Snyder v. Lovercheck*, 992 P.2d 1079, 1089 (Wyo. 1999).  Courts are not free to rewrite contracts under the guise of interpretation where the contractual provisions are clear and unambiguous.  *See Snyder*, 992 P.2d at 1089.  Furthermore, Wyoming courts do not lightly interfere with the freedom of contract.  *See Pittard,* 156 P.3d at 974; *Wyoming Realty Co. v. Cook*, 872 P.2d 551, 554 (Wyo. 1994) (expressing that public policy does not favor the forfeiture of contract rights).  In the instant case, the exculpatory provisions of the parties' daywork contract are set forth in the background of the case above.  SST Energy argues that it is entitled to summary judgment on Patmos' claims as follows.

1.  Breach of Contract

SST Energy argues that Patmos waived its right to bring a breach of contract claim in the parties' daywork contract.

Subparagraph 14.13 of the parties' daywork contract provides that Patmos' release of liability would be "without limit and without regard to the cause or causes thereof, including, but not limited to . . . breach of duty (whether statutory, contractual or otherwise) . . . , breach of contract." (Daywork Contract ¶ 14.13.).  Based on the plain language of the contract, the court

finds that Patmos waived its breach of contract claim.  Therefore, the court dismisses Patmos'
breach of contract claim.

## 2.  Breach of Implied Warranty

SST Energy argues that Patmos explicitly waived its right to bring a breach of implied
warranty claim in the parties' daywork contract.  SST Energy also argues that this claim fails
because no such implied warranty exists in a daywork contract under Wyoming law.

Subparagraph 14.13 of the parties' daywork contract states that Patmos released SST
Energy from liabilities including "breach of representation or warranty (express or implied)."
(Daywork Contract ¶ 14.13.)  Based on the plain language of the contract, the court finds that
Patmos waived its breach of implied warranty claim.  Moreover, Patmos has not provided nor
has the court found a Wyoming case or any case that recognizes an implied warranty in a
daywork contract.  Accordingly, the court dismisses Patmos' breach of implied warranty claim.

## 3.  Breach of the Duty of Good Faith and Fair Dealing

As stated above, the court finds that Patmos cannot and did not waive its breach of duty
and good faith claim.  Consequently, the court must determine whether Patmos' claim meets the
summary judgment standard.  Patmos contends that SST Energy breached its implied covenant
of good faith and fair dealing, governing its performance of the contract, by failing and refusing
to provide all of the equipment specified in the contract, failing to furnish equipment that
functioned properly, failing to furnish a trained and adequate crew, and failing and refusing to
comply with the directions of Patmos' agents.  Furthermore, Patmos argues that SST Energy
breached the implied covenant by drilling a hole that deviated more than one quarter of a mile
from its surface location and outside the lease, in violation of the permit and Utah's Division of
Oil, Gas and Mining regulations.

20

The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement. *See Scherer Const., LLC,* 18 P.3d at 653. Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party. *See id.* "The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties." *Id.* (citation omitted). "The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties." *Id.* (citation omitted). In the instant case, Patmos alleges that SST Energy did not act and perform its duties in a manner consistent with the agreed purpose and justified expectations of Patmos. The purpose of the contract between Patmos and SST Energy was to drill CBM 22-14 to a contract depth of 10,000 feet under Patmos' lease. Patmos alleges SST Energy represented it would provide a quality rig and equipment, but SST Energy provided a defective rig and defective equipment. Patmos alleges that SST Energy represented it would provide a quality and experienced crew, but it provided a drilling crew that was inexperienced, not properly trained and incompetent. The CBM 22-14 significantly deviated off vertical from the surface location. Patmos eventually abandoned CBM 22-14 before reaching a well depth of 10,000 feet. Patmos alleges that SST Energy drilled CBM 22–14 in a manner such that it could not reasonably be completed and was unusable, a total loss.

Granting all favorable inferences from the evidence to Patmos, the court finds that Patmos' implied covenant of good faith and fair dealing claim survives summary judgment.

4.  Negligence

SST Energy argues that Patmos explicitly waived its right to bring a negligence claim in the parties' daywork contract. SST Energy also argues that Patmos' negligence claim fails under the economic loss doctrine.

Subparagraph 14.13 of the parties' daywork contract states that Patmos released SST Energy from liabilities including "any theory of tort," "fault," or "the negligence of any degree or character (regardless of whether such negligence is sole, joint or concurrent, active, passive or gross) of any party or parties, including the party seeking the benefit of the release, indemnity or assumption of liability." (Daywork Contract ¶ 14.13.)  Based on the plain language of the contract, the court finds that Patmos waived its negligence claim.

Even without a waiver, Patmos' negligence claim fails under the economic loss doctrine. The economic loss rule "bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234–35 (Wyo. 1996).  The "economic loss rule" is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract."  *Id.* at 1235 (citation omitted).  Regarding economic loss, tort liability can only be premised on a duty independent of contractual duties.  *Id.* at 1235 n.1.  Here, Patmos asks for precisely what the economic loss rule prohibits, the ability to assert an action in tort for purely economic losses contemplated and covered by the specific provisions of the parties' daywork contract.

Nevertheless, Patmos attempts to sidestep the economic loss rule with three arguments. First, Patmos argues the economic loss rule does not apply because SST Energy used negligent

22

misrepresentation or fraud to induce Patmos to sign the parties' daywork contract.  The tort of fraudulent inducement defines an independent duty for which recovery in tort for economic loss is available.  *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 12–13 (Utah 2003) (recognizing independent tort duty under Wyoming law for fraudulent inducement).  Patmos summarily alleges that SST Energy made misrepresentations to Patmos either deliberately, with reckless indifference or negligently with knowledge that Patmos would act in reliance on the misrepresentations.  The court finds that Patmos gave up its right to oppose summary judgment on these ground by failing to plead them and/or provide sufficient evidence to support them.

Second, Patmos argues that the economic doctrine does not apply because SST Energy owed Patmos an independent duty equivalent to that of a professional.  Patmos claims that independent duties exist in circumstances where professionals are not guaranteeing a result that can be described in a contract, but instead are "agreeing to exercise skill and knowledge normally possessed by members of the profession in an effort to achieve goals for the clients that cannot be guaranteed."  *See Rapidigm, Inc. v. ATM Management Services*, LLC, No. GD02–17261, 2003 WL 23146480 (Pa. Com. Pl. Jul. 10, 2003).  Patmos fails to cite to the court any authority that stands for the proposition that drilling contractors are professionals that owe independent, non-contractual duties to well operators.  Furthermore, SST Energy had a contractual duty to act under the direction and control of Patmos' professionals.  (Daywork Contract at 1.)  SST Energy was taking orders from Patmos and acting under its control, not providing information, guidance and advice.  The court finds that SST Energy did not have an independent duty to Patmos.

Third, Patmos argues that the economic loss rule does not apply because SST Energy's promised services gave rise to an independent duty.  The court construes Patmos' claim to be that the economic loss rule does not apply to contracts for services.  (Pl.'s Opp'n Summ. J. at 22

23

("[T]he IADC contract was not simply one which required the payment of money or the delivery of goods.  Here, SST contracted to 'furnish equipment, labor and perform services.'  The promised service is at least one basis for Patmos' tort claims, and thus the type of contract giving rise to an independent duty.").)

The court strongly rejects Patmos' assertion.  Unless a service contract involves an independent duty of care, there can be no independent cause of action sounding in tort.  *See Rissler*, 929 P.2d at 1235 n.1 (establishing that tort liability can only be premised on a duty independent of contractual duties).  The question of whether an independent duty exists is a question of law and involves the "examination of the legal relationships between the parties," "an analysis of the duties created by these relationships," and "policy judgments applied to relationships."  *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, L.C.*, No. 20070914, 2009 WL 3151197, at *6 (Utah Oct. 2, 2009).  The question is not whether the contract is for services or goods.  The court finds that a duty independent of contractual duties does not automatically arise in a service contract.  Again, SST Energy did not owe Patmos an independent duty.

In sum, SST Energy is entitled to summary judgment on Patmos' claim for negligence pursuant to both the plain language of the daywork contract and the economic loss rule.

5.  Consequential Damages

SST Energy argues that Patmos specifically waived all claims against SST Energy for consequential damages.  SST Energy also argues that even without a waiver, Patmos' "consequential damages" are not consequential damages because they are merely business expenses that Patmos is not entitled to recover from SST Energy.  In opposition, Patmos argues

that summary judgment is inappropriate because whether damages are consequential versus direct is a question of fact that must be decided by the jury.

In the exculpatory provisions, Patmos specifically waived all claims against SST Energy for consequential damages.  (*See* Daywork Contract ¶ 14.12.)  The contract defines consequential damages

> to include, without limitation, the following: loss of profit or revenue; costs and expenses resulting from business interruption; loss of or delay in production; loss of or damage to the leasehold; loss of or delay in drilling or operating rights; cost of or loss of use of property, equipment, materials and services, including without limitation those provided by contractors or subcontractors of every tier or by third parties.

(Daywork Contract ¶ 14.12.)  Patmos is bound to the unambiguous terms of its agreement.  *See* Restatement (Second) of Contracts § 351 cmt. a (1981) ("When parties expressly exclude or limit consequential damages, the basic principles of freedom of contract counsel that the agreed upon provision should be enforced.").  Therefore, Patmos' claim for consequential damages is barred regardless of the cause of action.

Further, the court finds it is unnecessary to determine whether the damages Patmos seeks are direct or consequential.  Patmos contractually assumed sole responsibility for "damage to or loss of the hole."  (*See* Daywork Contract ¶ 14.5.)  Thus, any claim for damages that is related to "damage to or loss of the hole" is barred regardless of being direct or consequential.  Consequently, summary judgment on this issue is appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, SST Energy's motion for summary judgment is GRANTED in part and DENIED in part.  Patmos' claims for breach of contract, breach of implied warranty, negligence, and consequential damages are dismissed.  Patmos' claims for breach of implied covenant of good faith and fair dealing and declaratory relief survive summary judgment.

IT IS SO ORDERED.

DATED this 23rd day of December, 2009.

_____
Dee Benson
United States District Judge